## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

MOTION OFFENSE, LLC,

                     Plaintiff

v.

GOOGLE LLC,

                     Defendant.

**Civil Action No.: 6:21-cv-514**

**JURY TRIAL DEMANDED**

**PATENT CASE**

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Motion Offense, LLC ("Motion Offense" or "Plaintiff"), files this Complaint against Google, LLC ("Google" or "Defendant") seeking damages and other relief for patent infringement, and alleges with knowledge to its own acts, and on information and belief as to other matters, as follows:

### PARTIES

1.      Plaintiff is a limited liability company organized and existing under the laws of the State of Texas, having its principal place of business at 211 West Tyler Street, Suite C, Longview, Texas, 75601.

2.      Defendant Google is a Delaware corporation with a physical address at 500 West 2nd Street, Austin, Texas 78701.  Google may be served with process through its registered agent, the Corporation Service Company, at 211 East 7th Street, Suite 620, Austin, Texas 78701.  Google is registered to do business in the State of Texas and has been since at least November 17, 2006.

3. This Court has personal jurisdiction over Google at least because Google regularly conducts and transacts business, including infringing acts described herein, in this District.

4. Defendant conducts business in Texas, directly or through intermediaries and offer products or services, including those accused herein of infringement, to customers, and potential customers located in Texas, including in the Western District of Texas.

## JURISDICTION AND VENUE

5. This action arises under the patent laws of the United States, 35 U.S.C. §101, et seq. This Court has subject matter jurisdiction under 28 U.S.C. §§1331 and 1338(a).

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §1400(b). Google maintains an established place of business in the state of Texas and the Western District of Texas, specifically, including an office at 500 West 2nd Street, Austin, Texas 78701.

7. Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process or the Texas Long Arm Statute, because Defendant conducts substantial business in this forum, including: (i) making, using, selling, importing, and/or offering for sale one or more cloud-based applications, but not limited to Google Drive (drive.google.com) and Google Cloud (cloud.google.com), stored and/or hosted on one or more servers owned or under the control of Google; (ii) making, using, selling, importing, and/or offering for sale software for smartphones, tablets, and other computing devices (e.g., laptops, desktops, Chromebooks, etc.); or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to citizens and residents in Texas and in this District.

## THE PATENTS IN SUIT

8. On May 20, 2018, Robert Paul Morris filed United States Patent Application No. 15/984,407 ("the '407 Application"). The '407 Application was duly examined and issued as

United States Patent No. 10,303,353 ("the '353 patent") (entitled "Methods, Systems, and Computer Program Products for Sharing a Data Object in a Data Store via a Communication"), on May 28, 2019.

9. Motion Offense is the owner of the '353 patent and has the full and exclusive right to bring actions and recover past, present, and future damages for Google's infringement of the '353 patent.

10. The '353 patent is valid and enforceable. A true and correct copy of the '353 patent is attached hereto as Exhibit 1.

11. On April 10, 2019, Robert Paul Morris filed United States Patent Application No. 16/380,975 ("the '975 Application"). The '975 Application was duly examined and issued as United States Patent No. 10,613,737 ("the '737 patent") (entitled "Methods, Systems, and Computer Program Products for Sharing a Data Object in a Data Store via a Communication"), on April 7, 2020.

12. Motion Offense is the owner of the '737 patent and has the full and exclusive right to bring actions and recover past, present, and future damages for the Google's infringement of the '737 patent.

13. The '737 patent is valid and enforceable. A true and correct copy of the '737 patent is attached hereto as Exhibit 2.

14. On March 20, 2019, Robert Paul Morris filed United States Patent Application No. 16/360,001 ("the '001 Application"). The '001 Application was duly examined and issued as United States Patent No. 10,803,140 ("the '140 patent") (entitled "Methods, Systems, and Computer Program Products for Web Browsing"), on October 13, 2020.

15.     Motion Offense is the owner of the '140 patent and has the full and exclusive right to bring actions and recover past, present, and future damages for the Google's infringement of the '140 patent.

16.     The '140 patent is valid and enforceable.  A true and correct copy of the '140 patent is attached hereto as Exhibit 3.

17.     On October 3, 2018, Robert Paul Morris filed United States Patent Application No. 16/151,312 ("the '312 Application").  The '312 Application was duly examined and issued as United States Patent No. 10,949,507 ("the '507 patent") (entitled "Methods, Systems, and Computer Program Products for Web Browsing"), on March 16, 2021.

18.     Motion Offense is the owner of the '507 patent and has the full and exclusive right to bring actions and recover past, present, and future damages for the Google's infringement of the '507 patent.

19.     The '507 patent is valid and enforceable.  A true and correct copy of the '507 patent is attached hereto as Exhibit 4.

20.     On April 2, 2018, Robert Paul Morris filed United States Patent Application No. 15/943,681 ("the '681 Application").  The '681 Application was duly examined and issued as United States Patent No. 10,904,178 ("the '178 patent") (entitled "Methods, Systems, and Computer Program Products for Processing a Request for a Resource in a Communication"), on January 26, 2021.

21.     Motion Offense is the owner of the '178 patent and has the full and exclusive right to bring actions and recover past, present, and future damages for the Google's infringement of the '178 patent.

22.     The '178 patent is valid and enforceable.  A true and correct copy of the '178 patent is attached hereto as Exhibit 5.

23.     The '353, '737, '140, '507, and '178 patents are collectively referred to herein as the "Motion Offense Patents" or the "patents in suit."

24.     Motion Offense has not practiced any claimed invention of the patents in suit.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 10,303,353**

25.     The allegations set forth in the foregoing paragraphs 1 through 24 are incorporated into this Claim for Relief.

26.     The '353 patent describes and claims systems and methods which make data sharing more rapid and efficient by allowing for the "sharing [of] a data object in a data store via a communication." '353 patent, Ex. 1 at 2:7-8.

27.     Among the specific technologic improvements to devices and methods for making data sharing more rapid and efficient, the '353 patent describes systems and methods for "receiving . . . data object information " *See, e.g.*, '353 patent, Ex. 1 at 27:40-46 ("[A] system for sharing a data object in a data store via a communication includes means for receiving, by a second communications agent that represents a second user, data object information that identifies a data object in a second data store in a second execution environment that includes the second communications agent.")  Figure 7 of the '353 patent, reproduced below, illustrates an exemplary data and execution flow for processing a data object identification request in a communication according to an aspect of the subject matter described in the '353 patent:



FIG. 7

'353 patent, Ex. 1, Fig. 7.

28.     The claims of the '353 patent do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, the claims of the '353 patent recite one or more inventive concepts that are rooted in computerized data sharing technology, and overcome problems specifically arising in the realm of computerized data sharing technologies.

29.     The claims of the '353 patent recite an invention that is not merely the routine or conventional use of data sharing systems and methods.  Instead, the invention describes systems and methods which make data sharing more rapid and efficient.

30.     The technology claimed in the '353 patent does not preempt all ways of using data sharing tools nor preempt the use of all data sharing tools, nor preempt any other well-known or prior art technology.

31.     Accordingly, each claim of the '353 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

32.     The '353 patent includes 21 claims.  '353 patent, Ex. 1 at cols. 43-48.

33.     Google has been and is directly infringing, either literally or under the doctrine of equivalents, at least claim 1 of the '353 patent by making, using (including without limitation testing), selling, importing, and/or offering to sell products and systems, including by way of example, the Google Drive website (drive.google.com) and servers, and the Google Drive for Desktop application (also known as Google Drive File Stream) (together, the "Accused Drive Instrumentalities").  *See* Claim Charts for the '353 patent, Exhibits 6 and 7.  As demonstrated by the attached claim charts, each and every element of claim 1 of the '353 patent is found in the Accused Drive Instrumentalities.

34.     Google's acts of infringement have occurred within this District and elsewhere throughout the United States.

35.     Motion Offense has been harmed by Google's infringing activities with respect to the '353 patent

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 10,613,737

36.     The allegations set forth in the foregoing paragraphs 1 through 35 are incorporated into this Claim for Relief.

37.     The '737 patent describes and claims systems and methods which make data sharing more rapid and efficient by allowing for the "sharing [of] a data object in a data store via a communication." '737 patent, Ex. 2 at 2:10-11.

38.     Among the specific technologic improvements to devices and methods for making

data sharing more rapid and efficient, the '737 patent describes systems and methods for "receiving

. . . data object information " *See, e.g.*, '737 patent, Ex. 2 at 27:40-46 ("[A] system for sharing a

data object in a data store via a communication includes means for receiving, by a second

communications agent that represents a second user, data object information that identifies a data

object in a second data store in a second execution environment that includes the second

communications agent."  Figure 7 of the '737 patent, reproduced below, illustrates an exemplary

data and execution flow for processing a data object identification request in a communication

according to an aspect of the subject matter described in the '737 patent:



FIG. 7

'737 patent, Ex. 2, Fig. 7.

39.     The claims of the '737 patent do not merely recite the performance of some

business practice known from the pre-Internet world along with the requirement to perform it on

the Internet.  Instead, the claims of the '737 patent recite one or more inventive concepts that are rooted in computerized data sharing technology, and overcome problems specifically arising in the realm of computerized data sharing technologies.

40.     The claims of the '737 patent recite an invention that is not merely the routine or conventional use of data sharing systems and methods.  Instead, the invention describes systems and methods which make data sharing more rapid and efficient.

41.     The technology claimed in the '737 patent does not preempt all ways of using data sharing tools nor preempt the use of all data sharing tools, nor preempt any other well-known or prior art technology.

42.     Accordingly, each claim of the '737 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

43.     The '737 patent includes 40 claims.  '737 patent, Ex. 2 at cols. 43-54.

44.     Google has been and is directly infringing, either literally or under the doctrine of equivalents, at least claim 1 of the '737 patent by making, using (including without limitation testing), selling, importing, and/or offering to sell the Accused Drive Instrumentalities.  *See* Claim Charts for the '737 patent, Exhibits 8 and 9.  As demonstrated by the attached claim charts, each and every element of claim 1 of the '737 patent is found in the Accused Drive Instrumentalities.

45.     Google's acts of infringement have occurred within this District and elsewhere throughout the United States.

46.     Motion Offense has been harmed by Google's infringing activities with respect to the '737 patent.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 10,803,140

47.     The allegations set forth in the foregoing paragraphs 1 through 46 are incorporated into this Claim for Relief.

48.     The '140 patent relates to "integrating the processing of data exchanged via a network between and/or among various client applications, server and/or cloud services, services, and/or components, and more particularly to web browsing."   '140 patent, Ex. 3 at 1:21-26. Specifically, the '140 patent claims systems and methods which make web browsing more rapid and efficient by allowing for content from a plurality of domains to be displayed in a single web page using a plurality of threads, while preventing malicious code in one domain from accessing the other domain.  '140 patent, Ex. 3 at 83:11-84:11 (Claim 1).

49.     Exemplary Figure 18 of the '140 patent, reproduced below, illustrates an exemplary user interface for displaying content from a plurality of domains in a single browser window, according to an aspect of the subject matter described in the '140 patent:



'140 patent, Ex. 3, Fig. 18.

50.     The claims of the '140 patent do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, the claims of the '140 patent recite one or more inventive concepts that are rooted in computerized multithreading and data security, and overcome problems specifically arising in the realm of distributed network technologies.

51.     The claims of the '140 patent recite an invention that is not merely the routine or conventional use of web browsing systems and methods.  Instead, the invention describes systems and methods which make browsing content from a plurality of sources and domains in a single window more rapid and efficient.

52.     The technology claimed in the '140 patent does not preempt all ways of using web browsing tools nor preempt the use of all web browsing tools, nor preempt any other well-known or prior art technology.

53.     Accordingly, each claim of the '140 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

54.     The '140 patent includes 82 claims.  '140 patent, Ex. 3 at cols. 83-99.

55.     Google has been and is directly infringing, either literally or under the doctrine of equivalents, at least claim 1 of the '140 patent by making, using (including without limitation testing), selling, importing, and/or offering to sell software for smartphones, tablets, and other computing devices (e.g., laptops, desktops, Chromebooks, etc.) (the "Accused Software Instrumentalities"), including, without limitation, the Google Chrome browser, Chrome Operating System, and Android Operating System.  *See* Claim Charts for the '140 patent, Exhibit 10.  As

demonstrated by the attached claim charts, each and every element of claim 1 of the '140 patent is found in the Accused Software Instrumentalities.

56.     Google's acts of infringement have occurred within this District and elsewhere throughout the United States.

57.     Motion Offense has been harmed by Google's infringing activities with respect to the '140 patent.

**COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 10,949,507**

58.     The allegations set forth in the foregoing paragraphs 1 through 57 are incorporated into this Claim for Relief.

59.     The '507 patent relates to "integrating the processing of data exchanged via a network between and/or among various client applications, server and/or cloud services, services, and/or components, and more particularly to web browsing."  '507 patent, Ex. 4 at 1:19-23. Specifically, the '507 patent claims systems and methods which make web browsing more rapid and efficient by allowing for the display of web page content in either an application interface or a web browser interface, depending on a security criterion.  '507 patent, Ex. 4 at 85:1-43 (Claim 1).

60.     Exemplary Figure 29 of the '507 patent, reproduced below, illustrates an exemplary block diagram with logic for displaying web page content in one or more interfaces, including an application interface and a browser interface, according to an aspect of the subject matter described in the '507 patent:



***Fig. 29***

'507 patent, Ex. 4, Fig. 29.

61.     The claims of the '507 patent do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, the claims of the '507 patent recite one or more inventive concepts that are rooted in computerized multithreading and data security, and overcome problems specifically arising in the realm of distributed network technologies.

62.     The claims of the '507 patent recite an invention that is not merely the routine or conventional use of web browsing systems and methods.  Instead, the invention describes systems and methods which web browsing more rapid and efficient by allowing for the display of web page

content in either an application interface or a web browser interface, depending on a security criterion.

63.     The technology claimed in the '507 patent does not preempt all ways of using web browsing tools nor preempt the use of all web browsing tools, nor preempt any other well-known or prior art technology.

64.     Accordingly, each claim of the '507 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

65.     The '507 patent includes 75 claims.  '507 patent, Ex. 4 at cols. 85-96.

66.     Google has been and is directly infringing, either literally or under the doctrine of equivalents, at least claim 1 of the '507 patent by making, using (including without limitation testing), selling, importing, and/or offering to sell the Accused Software Instrumentalities which include, without limitation, the Google Chrome browser and the Android Operating System.  *See* Claim Charts for the '507 patent, Exhibit 11.  As demonstrated by the attached claim charts, each and every element of claim 1 of the '507 patent is found in the Accused Software Instrumentalities.

67.     Google's acts of infringement have occurred within this District and elsewhere throughout the United States.

68.     Motion Offense has been harmed by Google's infringing activities with respect to the '507 patent.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 10,904,178

69.     The allegations set forth in the foregoing paragraphs 1 through 68 are incorporated into this Claim for Relief.

70.     The '178 patent relates to, describes, and claims systems and methods which make data sharing more rapid and efficient by allowing for the "processing [of] a request for a resource in a communication." '178 patent, Ex. 5 at 3:52-53.

71.     The patented systems and methods make automated communication systems more efficient and robust by allowing for real-time or near real-time requests for, and management of, various digital resources, including digital images.   As the '178 patent describes, traditional resource requests (e.g., requests for an attachment via email) "may be as vague or as specific as the language used by the requesting user.   The other user must interpret the request and find a resource that seems to match the request." '178 patent, Ex. 5 at 3:43-45.

72.     In order to alleviate the ambiguity and delay inherent in traditional resource requests, the '178 patent describes systems and methods that provide an improved structure and computing environment for resource request management.   For example, the '178 patent describes the use of automated instant messaging systems that display "a plurality of user interface elements for causing attachment requests to be sent that are valid according to a criterion schema defining at least one of the format or the vocabulary" including a first and second menu item with corresponding text, and receiving an indication of selection of a menu item, sending a first attachment request that is also valid according to the criterion schema, receiving a response based on this first attachment request, automatically identifying and displaying "at least one first image . . . based on the first attachment request," performing similarly when the second menu item is selected, and "causing storage of the at least portion of the instant messaging application." '178 patent, Ex. 5 at 47:32-48:36 (Claim 1).

73.     Figure 5 of the '178 patent, reproduced below, illustrates the improved structure and computing environment for resource request management disclosed by the '178 patent.   In

particular, it illustrates an exemplary block diagram with logic for processing a request for a resource in a communication, including an access handler that may be invoked to access a resource in response to a user input to retrieve the resource from a communication, according to an aspect of the subject matter described in the '178 patent:



Fig. 5

'178 patent, Ex. 5, Fig. 5.

74.    Among the specific technologic improvements to devices and methods for making data sharing more rapid and efficient, the '178 patent describes systems and methods for "processing a request for a resource in a communication." *See, e.g.*, '178 patent, Ex. 5 at 25:36-40 ("[A] system for processing a request for a resource in a communication includes means for

receiving, by a second node representing a second user, a second communication including, based on the request portion, the resource, as an attachment, and a second message addressed to the second user"). Specifically, the '178 patent describes such technological improvements as they relate to instant messaging applications and clients. *See e.g.*, '178 patent, Ex. 5 at 25:36-40. In addition, the '178 patent describes systems and methods that make communication regarding resource requests more efficient by structuring the communication, via the criterion schema defining at least one of the format or the vocabulary of the attachment requests. *E.g.*, '178 patent, Ex. 5 at 47:32-48:36 (Claim 1).

75.     Among the specific technologic improvements to devices and methods for automated resource request management, the '178 patent describes systems and methods that make communication regarding resource requests more robust by providing automated location, retrieval, and communication of images in response to the structured language of the automated resource request. *E.g.*, '178 patent, Ex. 5 at 47:32-48:36 (Claim 1).

76.      The claims of the '178 patent do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claims of the '178 patent recite one or more inventive concepts that are rooted in computerized data sharing technology, and overcome problems specifically arising in the realm of computerized data requesting, processing, and sharing technologies.

77.     The claims of the '178 patent recite an invention that is not merely the routine or conventional use of data sharing systems and methods. Instead, the invention describes systems and methods which make the processing of requests for data-sharing more rapid and efficient.

78.     The technology claimed in the '178 patent does not preempt all ways of using processing tools for data-sharing nor preempt the use of all said tools, nor does the technology claimed in the '178 patent preempt any other well-known or prior art technology.

79.     Accordingly, each claim of the '178 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

80.     The '178 patent includes 20 claims.  '178 patent, Ex. 5 at cols. 47-54.

81.     Google has been and is directly infringing, either literally or under the doctrine of equivalents, at least claim 1 of the '178 patent by making, using (including without limitation testing), selling, importing, and/or offering to sell products and systems, including by way of example, one or more cloud-based applications, but not limited to, Google Cloud (cloud.google.com), stored and/or hosted on one or more servers owned or under the control of Google (the "Accused Cloud Instrumentalities").  *See* Claim Charts for the '178 patent, Exhibit 12.  As demonstrated by the attached claim charts, each and every element of at least claim 1 of the '178 patent is found in the Accused Cloud Instrumentalities.

82.     Google's acts of infringement have occurred within this District and elsewhere throughout the United States.

83.     Motion Offense has been harmed by Google's infringing activities with respect to the '178 patent.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that the Court:

A.     Declaring that Defendant has infringed the patents in suit;

B.      Awarding damages in an amount to be proven at trial, but in no event less than a reasonable royalty for Defendant's infringement including pre-judgment and post-judgment interest at the maximum rate permitted by law;

C.      Ordering an award of reasonable attorneys' fees and enhanced damages as appropriate against Defendant to Motion Offense as provided by 35 U.S.C. § 285;

D.      Awarding expenses, costs, and disbursements in this action against Defendant, including prejudgment interest; and

E.      All other relief necessary or appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues so triable.


Dated:  May 20, 2021                        */s/ Timothy Devlin*_____
                                            Timothy Devlin
                                            Derek Dahlgren (*pro hac vice* to be filed)
                                            Srikant Cheruvu (*pro hac vice* to be filed)
                                            **DEVLIN LAW FIRM LLC**
                                            1526 Gilpin Avenue
                                            Wilmington, DE 19806
                                            Telephone: (302) 449-9010
                                            Facsimile: (302) 353-4251
                                            tdevlin@devlinlawfirm.com
                                            ddahlgren@devlinlawfirm.com
                                            scheruvu@devlinlawfirm.com

                                            *Attorneys for Plaintiff Motion Offense, LLC*