# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| MOTION OFFENSE, LLC, | CIVIL ACTION NO. 6:21-cv-514-ADA |
| Plaintiff, | JURY TRIAL DEMANDED |
| vs. | |
| GOOGLE LLC, | |
| Defendant. | |

## DEFENDANT GOOGLE LLC'S OPENING CLAIM CONSTRUCTION BRIEF

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  ARGUMENT ..................................................................................................... 1

    A.   U.S. Patent Nos. 10,303,353; 10,613,737; and 11,044,215 ................................ 1

        1.   "Information associated with [the] at least one folder" ('353 Patent, Claim 1; '737 Patent, Claim 1; '215 Patent, Claims 1, 19, 45, 51) .......... 2

        2.   "Immediately follows" ('215 Patent, Claims 19, 45) .............................. 7

    B.   U.S. Patent No. 10,803,140 ................................................................................. 10

        1.   "Transform" ('140 Patent, Claims 1, 3, 9, 10, 22, 23, 25, 26) ................ 11

        2.   "Simultaneously" ('140 Patent, Claim 1) ................................................ 13

    C.   U.S. Patent No. 10,904,178 ................................................................................. 16

        1.   "Attachment" ('178 Patent, Claims 1–4, 18, 19) ..................................... 16

    D.   U.S. Patent No. 10,949,507 ................................................................................. 17

        1.   "Security criterion" ('507 Patent, Claims 1, 40, 42, 73) ......................... 17

III.  CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Biosig Instruments, Inc. v. Nautilus, Inc.*,
  783 F.3d 1374 (Fed. Cir. 2015)..................................................................................8, 14

*CA, Inc. v. Netflix, Inc.*,
  No. 2:21-CV-00080-JRG-RSP, 2021 WL 5323413 (E.D. Tex. Nov. 16, 2021) ....................19

*Donghee Am., Inc. v. Plastic Omnium Advanced Innovation & Rsch.*,
  812 F. App'x 988 (Fed. Cir. 2020) ..........................................................................4

*E–Watch Inc. v. Apple, Inc.*,
  No. 2:12-cv-1061-JRG-RSP, 2015 WL 1387947 (E.D. Tex. Mar. 25, 2015) ..........................3

*Evicam International, Inc. v. Enforcement Video, LLC*,
  No. 4:16-cv-105, 2016 WL 6470967 (E.D. Tex. Nov. 2, 2016).................................10, 14, 15

*Intell. Ventures II LLC v. Kemper Corp.*,
  No. 6:16-cv-81-JRG-KNM, 2019 WL 398677 (E.D. Tex. Jan. 31, 2019) ..............................4

*Interval Licensing LLC v. AOL, Inc.*,
  766 F.3d 1364 (Fed. Cir. 2014)...............................................................................9, 10

*IQASR LLC v. Wendt Corp.*,
  825 F. App'x 900 (Fed. Cir. 2020) ..........................................................................19

*Iridescent Networks, Inc. v. AT&T Mobility, LLC*,
  933 F.3d 1345 (Fed. Cir. 2019).............................................................................19

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  572 U.S. 898 (2014).............................................................................. *passim*

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008).............................................................................3, 17

*Phonometrics, Inc. v. N. Telecom Inc.*,
  133 F.3d 1459 (Fed. Cir. 1998)................................................................................5

*U.S. Well Services, Inc. v. Halliburton Co.*,
  No. 6:21-cv-00367-ADA, Dkt. 74 (W.D. Tex. Jan 17, 2022) ......................... *passim*

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996)...............................................................................17

## I.     INTRODUCTION

The claim construction disputes in this case center around vague terms that leave a POSITA completely uncertain about the scope of the claims. Many of the terms in this case are therefore indefinite. This uncertainty is compounded by Motion Offense's infringement positions, which further confuse the other disputed limitations' scope. For those terms, Google offers constructions consistent with the intrinsic and extrinsic evidence that correct Motion Offense's apparent misapprehension of the terms' meanings. Accordingly, Google respectfully requests that the Court adopt its proposed claim constructions.

## II.    ARGUMENT

### A.     U.S. Patent Nos. 10,303,353; 10,613,737; and 11,044,215

The '353, '737, and '215 patents (collectively, "the Data Sharing Patents") relate to the processing and sharing of data that is located in a data store. The Data Sharing Patents are all in the same family; they each claim priority to the same application, and the '737 Patent is a continuation of the '353 Patent. The '353 and '737 patents share largely the same specification.

The Data Sharing Patents claim methods and systems for sharing data stored in a data store through a "specific combination of capabilities or operations." Ex. 1[1] ['353 Patent] at Abstract; Ex. 2 ['737 Patent] at Abstract. The asserted claims describe a specific order of operations for sharing data, which includes two nodes (or devices), two users (one at each node), the users performing a series of operations resulting in transmission of a message identifying data, and creation and display of a representation of that data. More specifically, each patent claims a process wherein, essentially:

- At the first node:

---

[1] Unless otherwise noted, all exhibit citations refer to exhibits to the declaration of Robert W. Unikel, filed concurrently herewith.

- ○ A user inputs information associated with at least one folder;

- ○ A user inputs an object associated with an email address;

- ○ The user selects an interface element and indication of that selection is detected;

● At the second node:

- ○ After the preceding steps have taken place, a message is received identifying a folder without including a file attachment; then

- ○ A representation of the folder is created and displayed.

Motion Offense asserts claims 1, 2, 5, and 16 of the '353 Patent; claims 1, 3, 13, and 14 of the '737 Patent; and claims 1, 13–15, 19, 20, 23–33, 35, 38–40, and 42–51 of the '215 Patent. Motion Offense accuses Google of directly infringing these claims through Google's Google Drive and Google Drive for Desktop products.

### 1.    "Information associated with [the] at least one folder" ('353 Patent, Claim 1; '737 Patent, Claim 1; '215 Patent, Claims 1, 19, 45, 51)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| No construction is necessary | "information previously connected to at least one existing folder" |

The parties disagree on the plain meaning of "information associated with at [the] least one folder." Motion Offense alleges that this limitation is met when a user creates and names a new folder. But the claim language and specification make clear that this limitation refers to entering information previously connected to an already existing folder (*e.g.*, entering the name of a folder that was previously given a name). Google's construction is consistent with the plain language of the claim and the intrinsic evidence and captures the key requirements of this limitation: (a) the folder must already exist; and (b) the information being entered must be pre-connected to this existing folder. "When the parties present a fundamental dispute regarding the scope of a claim

term, it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). "A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *Id*. at 1361. Only Google's construction is consistent with how "information associated with [the] at least one folder" is used in the claims and specification. Thus, the Court should resolve the parties' dispute over the meaning of this claim term by adopting Google's construction.

The claims demonstrate that Google's construction is correct because they show that the information must have been previously connected to the folder at issue. The claims recite:

- "receiving information ***associated*** with at least one folder" (Ex. 1 ['353 Patent] at Claim 1)(emphasis added);

- "allow receipt . . . of information ***associated*** with at least one folder" (Ex. 2 ['737 Patent] at Claim 1)(emphasis added); and

- "collecting information ***associated*** with at least one folder" (Ex. 3 ['215 Patent] at Claims 1, 51)(emphasis added).

Under this language, it only makes sense that the information at issue must already be associated with the folder at the time it is received or collected; the claims do not recite creating the information. In fact, the patentee uses the terms "creating," "created," and "creation" later in the asserted claims: *e.g.*, "creating . . . a representation of the at least one folder" (Ex. 1 ['353 Patent] at Claim 1), "cause creation . . . of a representation of the at least one folder" (Ex. 2 ['737 Patent] at Claim 1), "cause creation of a . . . representation of the at least one folder" (Ex. 3 ['215 Patent] at Claims 1 and 51). *See also*, Ex. 1 ['353 Patent] at Claims 2, 16; Ex. 2 ['737 Patent] at Claims 3, 13–14; Ex. 3 ['215 Patent] at Claim 50. This language demonstrates that the patentee knew how to draft language referring to creating new information but intentionally chose not to. *See E–Watch Inc. v. Apple, Inc.*, No. 2:12-cv-1061-JRG-RSP, 2015 WL 1387947, at *6 (E.D. Tex.

Mar. 25, 2015) ("[T]he surrounding claim language contradicts Plaintiff[']s interpretation because it indicates that the patentee understood how to draft claim language that referred to the capabilities of an element."). Therefore, the claim demonstrates that information already associated with a folder is received or collected, not created.

Moreover, the term "associated" is in the past-tense, suggesting that the information was already associated (*i.e.*, "previously connected") with a folder at the time it was received or collected. *See Donghee Am., Inc. v. Plastic Omnium Advanced Innovation & Rsch.*, 812 F. App'x 988, 990–91 (Fed. Cir. 2020) (nonprecedential) ("That context strongly suggests that the phrase is best read, based on the past-tense form of 'fasten' in the phrase, to refer to what has already occurred at that time."); *Intell. Ventures II LLC v. Kemper Corp.*, No. 6:16-cv-81-JRG-KNM, 2019 WL 398677, at *11 (E.D. Tex. Jan. 31, 2019) ("As Defendants correctly point out, 'contributed' is written in the past tense, and it indicates that content must have been 'contributed' by a user before it can be managed."). Thus, the information must be "associated" with an existing folder before it is received or collected. This supports Google's construction: "information previously connected to at least one existing folder."

Next, only Google's construction is consistent with how the term "associated" is used elsewhere in the claims. For example, the term "associated" is used as follows in the asserted claims:

- "receiving an object *associated* with at least one email address via the second user interface element" (Ex. 1 ['353 Patent] at Claim 1)(emphasis added);

- "allow receipt, at the first node, of an object *associated* with at least one email address via the second user interface element" (Ex. 2 ['737 Patent] at Claim 1)(emphasis added); and

- "a [] user interface element . . . for collecting at least one object *associated* with at least one email address, the at least one object *associated* with at least one email address being the at least one email address or an alias *associated* with the at least one email address" (Ex. 3 ['215 Patent] at Claims 1 and 52)(emphasis added).

As these limitations demonstrate, the email address must already be in existence for an object to be associated with it. It is nonsensical to read these limitations, as Motion Offense suggests, as covering the creation of an email address by typing it into the user interface element. Instead, the email address must already exist, and the object must previously be associated with it. The word "associated" must have the same meaning elsewhere in the claim. *See Phonometrics, Inc. v. N. Telecom Inc.*, 133 F.3d 1459, 1464 (Fed. Cir. 1998) ("A word or phrase used consistently throughout a claim should be interpreted consistently."). Thus, in regards to the disputed claim limitation at hand, the folder must already exist and the claim relates to entering information that has previously been connected to that folder.

Google's construction also finds support in the specification. The specification of the '353 and '737 patents describe locating data objects based on "matching criterion identified in a data object request." Ex. 1 ['353 Patent] at 38:8–29; Ex. 2



FIG. 6F

['737 Patent] at 38:8–29. In particular, the patents describe Figure 6F, which is a message received by one user, requesting a folder using a data object request UI interface element 666f. Ex. 1 ['353 Patent] at 37:20–46; Ex. 2 ['737 Patent] at 37:20–46. The recipient of the email uses this information to find the matching folder by, for example, authorizing a request to search for the folder, or modifying the request in order to perform the search. *Id.* In one embodiment, the user

"may invoke descriptor handler component 404 automatically to locate one or more data objects based on a matching criterion identified in a data object request and in response to detecting a data object request in a communication[.]" Ex. 1 ['353 Patent] at 38:8–29; Ex. 2 ['737 Patent] at 38:8–29. The "data object request" is analogous to the "information associated with at [the] least one folder." And for a criterion to be "matching" it must be previously connected to an existing folder; otherwise there would be no "match" and nothing for the criterion to "match" to.

The '215 Patent specification similarly describes a process by which already existing data objects are located in response to a request from a user, using information previously connected to that data. For example, in regards to Figure 6B, the specification describes that the UI element requests an existing data object. Specifically, the patent states, "FIG. 6B illustrates an access UI element 634b and an access all UI element 636b allowing a user to provide user input(s) to instruct communications agent 403 in execution environment 401 of first node 502 to request one or more data objects identified in the data object identification response." Ex. 3 ['215 Patent] at 34:1–6. Similarly, in regards to Figure 6D, the specification refers to searching already existing data, stating "the communicant . . . provid[es] an input corresponding to a search and reply UI element 654d." *Id*. at 39:24–28. Additionally, the '215 Patent specification describes that Figure 6E refers to searching for existing data, using information that matches that data. *Id*. at 39:38–43 (Figure 6E "includes a search UI element 656e for receiving user input authorizing and/or otherwise instructing execution environment 401 of second node 504 to locate data objects that match the data object identification request."). Following the search described in Figure 6E, Figure 6F illustrates a response dialog wherein "[a] user may select one or more data objects to identify in a data object identification response" by choosing elements 664f or 666f. *Id*. at 40:55–41:25. Thus, the search results in identification of existing data.



FIG. 6E          FIG.6F

Finally, the extrinsic evidence also supports Google's construction because the term "associate" is synonymous with "connect." For example, Merriam-Webster's Collegiate Dictionary 75 (11th ed. 2005) defines "associate" as "closely connected (as in function or office) with another." Ex. 4. Likewise, Webster's II New College Dictionary 68 (2001) defines "associate" as "[t]o connect or join together: LINK." Ex. 5. As yet another example, the American Heritage Dictionary of the English Language, 5th Edition (2011) defines "associate" as "to . . . connect logically . . . ." Ex. 6. Google's construction is therefore supported by both the intrinsic and extrinsic evidence.

Therefore, the plain language of the claim, embodiments in the specification, and extrinsic evidence all support Google's construction.

### 2.     "Immediately follows" ('215 Patent, Claims 19, 45)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction is necessary | Indefinite |

"Immediately follows" is a term of degree with no particular meaning in the art and the specification provides no standard for measuring that degree. Turnbull Decl. ¶¶ 35–37; *see Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1378 (Fed. Cir. 2015). The term is therefore indefinite.

The asserted claims recite a user input that "immediately follows" another user input. Specifically, the claims require:

> [T]he at least one object associated with the at least one email address is capable of being collected utilizing the second user interface element [in response to/ based on] a second single user input that ***immediately follows*** the first single user input, and the selection is capable of being detected utilizing the third user interface element [in response to/ based on] a third single user input that ***immediately follows*** the second single user input.

Ex. 3 ['215 Patent] at Claims 19, 45 (emphasis added). But a POSITA would not understand what "immediately" means in the context of these claims. Claims 19, 45; Turnbull Decl. ¶ 37. The term could be understood to mean that one user input must follow another user input within a matter of milliseconds, or seconds, or minutes (some other undefined period of time). Or the term could mean that one user input occurs after the other, without any intervening actions (or perhaps without any particular types of intervening actions). Or the term could mean that the later user input must be both the next action that occurs, without any intervening actions, *and* that it must occur within a period of time (which is undefined) after the preceding user input. There simply is no way to know what "immediately follows" means based on the claims, the specification, and the prosecution history.

"When a 'word of degree' is used the district court must determine whether the patent's specification provides 'some standard for measuring that degree.'" *Biosig*, 783 F.3d at 1378 (citation omitted). The specification provides no such standard. It does not even use the term "immediately follows" or "immediately." The prosecution history likewise provides no clarity on

what is meant by "immediately follows." Given that "immediately follows" has no meaning in the art and is not described by the intrinsic evidence, there is no frame of reference for when something "immediately follows." Turnbull Decl. ¶ 35.

Federal Circuit precedent supports Google's position. Terms that are purely subjective are indefinite where the specification and the prosecution history fail to provide objective boundaries that define the scope of the terms. *Interval Licensing LLC v. AOL, Inc*., 766 F.3d 1364, 1370–73 (Fed. Cir. 2014). In *Interval Licensing*, the Federal Circuit found claim terms reciting an "unobtrusive manner" to be indefinite because "whether something distracts a user from his primary interaction depends on the preferences of the particular user and the circumstances under which any single user interacts with the display." *Id*. at 1371 (citation omitted). The court rejected the idea that it was sufficient to identify "some standard for measuring the scope of the phrase" and found that the claim term was indefinite because the specification and prosecution history failed to "provide objective boundaries for those of skill in the art." *Id*. at 1370–71 ("The fact that [the patent holder] can articulate a definition supported by the specification . . . does not end the inquiry. Even if a claim term's definition can be reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope." (citing *Halliburton Energy Servs., Inc. v. M–I LLC*, 514 F.3d 1244, 1251 (Fed. Cir. 2008))).

Consistent with this case law, this Court recently found a similar term indefinite. In *U.S. Well Services, Inc. v. Halliburton Co.*, No. 6:21-cv-00367-ADA, Dkt. 74 (W.D. Tex. Jan 17, 2022) (Ex. 11), the Court found that the term "high pressure" was an indefinite term of degree. *Id.* at 18. There, as here, there was no accepted definition of the term in the art, and the intrinsic evidence did not provide any objective standard for ascertaining the scope of the term. *Id*. at 12. The patents

in that case merely repeated the language of the claims, but failed to provide any guidance on what it meant. Similarly, here, the specification provides no guidance; it does not even use the phrase "immediately follows" or "immediately." As in *U.S. Well Services*, "immediately follows" is indefinite because the intrinsic evidence provides no objective boundaries for one skilled in the art and therefore does not define what the term means with any reasonable certainty. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

Other courts have likewise held similarly undefined temporal terms indefinite. In *Evicam International, Inc. v. Enforcement Video, LLC*, the court found that the term "extended periods of time" was an indefinite term of degree where the patent "lack[ed] objective criteria for evaluating" the term and where there were "multiple reasonable interpretations regarding what period of time is extended . . . ." No. 4:16-cv-105, 2016 WL 6470967, at *19–20 (E.D. Tex. Nov. 2, 2016). There, as here, there was no accepted definition of the term in the art, and the intrinsic evidence did not provide any objective standard for ascertaining the scope of the term. *Id*. Further, just as here, the specification in *Evicam* "sets forth no guidance" regarding the disputed term. *Id.* at *19. As in *Evicam*, this term of degree is indefinite.

### B.      U.S. Patent No. 10,803,140

The '140 Patent claims relate to domain-separated processing, whereby content hosted at a first domain and content hosted at a second domain are processed and displayed in a single web page. The content in the first domain, which is identified by a URL, is processed using one process, and the content from the second domain, which is identified by a different URL, is processed using a separate process. The stated goal is to prevent malicious code from one domain from accessing the other domain. Ex. 7 ['140 Patent] at Claim 1.

Motion Offense asserts claims 1, 3, 4, 5, 7, 9, 10, 16, 20–23, 25, 26, 29, 34–37, and 39 of the '140 Patent. Motion Offense accuses Google of directly infringing these claims through Google's Site Isolation functionality.

### 1.  "Transform" ('140 Patent, Claims 1, 3, 9, 10, 22, 23, 25, 26)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| No construction is necessary | Indefinite |

The term "transform" is indefinite because the claims when "read in light of the specification . . . and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 572 U.S. at 901. Specifically, "transform" has no ordinary meaning to a POSITA in the context of the claims. Turnbull Decl. ¶ 40. The '140 Patent claims refer to "accessing" content using a URL and, "based on" the URL, "transform[ing]" it for presentation in a window. Ex. 7 ['140 Patent] at Claim 1. It is unclear what this means. For example, "transform" might refer to merely displaying content in a window, just as content at any URL would be displayed when a user attempts to access it. Or, the term might be understood to require that a portion of the URL causes the content to be altered or modified in some way (which is undefined) before it is displayed in a window. Turnbull Decl. ¶ 40. Motion Offense cites no evidence in its infringement contentions identifying how the accused products are alleged to "transform" any content.

The specification does not clarify the meaning of "transform." It refers to "[i]nformation that is transformed, translated, and/or otherwise processed by logic in presenting a user interface element by the output device . . . ." Ex. 7 ['140 Patent] at 6:51–54; Turnbull Decl. ¶ 42. But this disclosure provides no guidance as to what "transform" actually means or how it is executed. And it is unclear whether the terms "translated" and "otherwise processed by logic" are meant to be

synonymous with "transform" or whether they are meant to be distinct alternatives. Turnbull Decl. ¶ 42. The specification later refers to logic that can "transform data received via a user agent into presentation information if the data is not suitable presentation information already . . . ." Ex. 7 ['140 Patent] at 14:4–11. This too provides no guidance as to what "transform" means; it merely states that data is transformed (using undefined processes and/or criteria) into "presentation information," a term that is equally vague and provides no definitive guidance as to the required change in data. Turnbull Decl. ¶ 42. Last, the specification uses the word "transformation" to describe a process by which a validation report is generated, but such report is unrelated to the display of data. Ex. 7 ['140 Patent] at 14:40–57. None of these passages informs a POSITA to a degree of reasonable certainty as to what "transform" actually means and requires. Turnbull Decl. ¶ 42.

Further, the term "transform" was added during prosecution, along with the term "for presentation," to replace the original phrases "present . . . the first content in the first window associated with the first tab" and "present . . . the second content in the first window associated with the first tab." Ex. 8 [Amendment A (filed June 5, 2019)]. This amendment was made to rebut an argument advanced by the examiner related to prior art describing navigating between web pages sequentially within a single tab. *Id.* The applicant provided no explanation as to how "transform . . . for presentation" differed from "present," *id.*, and this amendment does not elucidate to one of skill in the art what the term "transform" means. Turnbull Decl. ¶ 41. Therefore, none of the intrinsic evidence provides useful guidance as to the meaning of "transform."

A claim term is indefinite where "the claim language might mean several different things and no informed and confident choice is available among the contending definitions." *U.S. Well Servs.*, No. 6:21-CV-00367-ADA, Dkt. 74 at 18 (Ex. 11) (quoting *Interval Licensing*, 766 F.3d at

1371). Here, "transform" has no ordinary and customary meaning to a POSITA, and the intrinsic evidence does not indicate which of the several plausible interpretations of "transform" is correct. Therefore, "transform" is indefinite.

### 2.    "Simultaneously" ('140 Patent, Claim 1)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction is necessary | Indefinite |

The term "simultaneously" is indefinite for at least four reasons. First, it is amenable to multiple possible definitions, each of which would establish a meaning and scope of the claims that is distinct from and incompatible with the others. *U.S. Well Servs.*, No. 6:21-CV-00367-ADA, Dkt. 74 at 18 ("[T]he claim language might mean several different things and no informed and confident choice is available among the contending definitions." (quoting *Interval Licensing*, 766 F.3d at 1371)). Second, "simultaneously" can be interpreted as a term of degree for which no boundaries defining its scope are provided. Third, it is not clear which language "simultaneously" is modifying in the claim. Fourth, "simultaneously" has no particular meaning to a person of skill in the art, and the intrinsic evidence does not inform a person of ordinary skill in the art of the scope of this term with any reasonable certainty. Turnbull Decl. ¶¶ 45–49; *Nautilus*, 572 U.S. at 901.

Claim 1 of the '140 Patent requires that the program "transform, by the first computing process, the second content for presentation, ***simultaneously*** with the first content, in the first window associated with the first tab . . ." and "transform, by a second computing process, the third content for presentation, ***simultaneously*** with the first content, in the first window that is associated with the first tab . . . ." Ex. 7 ['140 Patent] at Claim 1 (emphasis added). The patent nowhere explains what this means. It is unclear whether "simultaneously" in this context refers to

two distinct pieces of content being displayed on screen at the same instant, two pieces of content appearing together on screen at one moment (even if one is initially displayed before the other), two pieces of content being displayed by use of processes running completely in parallel, or something else. Turnbull Decl. ¶ 45. Given that the term is subject to multiple interpretations that are distinct from one another, it is indefinite. *See U.S. Well Servs.*, No. 6:21-CV-00367-ADA, Dkt. 74 at 18 (Ex. 11) (quoting *Interval Licensing*, 766 F.3d at 1371).

Under yet another possible interpretation, "simultaneously" may be used in the '140 Patent as a term of degree, referring to the period between when a URL is selected and when the content identified by the URL is completely displayed in a window. Turnbull Decl. ¶ 46. But the patent provides no standard for measuring that degree. Under this interpretation, "simultaneously" may refer to requests to access more than one piece of content being both initiated at the same instant and completed at the same instant, or it may refer to such requests being initiated and completed very close together in time, or it may refer merely to an overlap in the time between when one request is initiated and completed and when another request is initiated and completed. *Id.* Because the patent provides no "objective criteria for evaluating the meaning" of the term "simultaneously," this term is indefinite. *Evicam*, 2016 WL 6470967, at *20; *see also Biosig*, 783 F.3d at 1378 ("When a 'word of degree' is used the district court must determine whether the patent provides 'some standard for measuring that degree.'" (citation omitted)).

Not only is "simultaneously" amenable to multiple interpretations of how content may be presented but it is also unclear whether the term is meant to modify the word "presentation" at all. Again, Claim 1 of the '140 Patent requires that the program "***transform***, by the first computing process, the second content for ***presentation***, ***simultaneously*** with the first content, in the first window associated with the first tab . . ." and "***transform***, by a second computing process, the third

-14-

content for **presentation**, **simultaneously** with the first content, in the first window that is associated with the first tab . . . ." Ex. 7 ['140 Patent] at Claim 1. This language could be interpreted such that "simultaneously" is modifying the term "transform." If this is how the claim should be read, it is still left open to multiple interpretations. For example, "simultaneously" could refer to the content being "transformed" in its entirety at the same instant, or it could mean that the content is "transformed" in pieces in an overlapping manner, but not that the computing process for the transformation of each piece of content begins and ends at the exact same time as the computing process for the transformation of each other piece of content. Turnbull Decl. ¶ 47; *U.S. Well Servs.*, No. 6:21-CV-00367-ADA, Dkt. 74 at 18 ("'[T]here is a[n] indefiniteness problem' [where] 'the claim language might mean several different things and no informed and confident choice is available among the contending definitions.'" (quoting *Interval Licensing*, 766 F.3d at 1371)); *Evicam*, 2016 WL 6470967, at *20 ("[T]he existence of multiple reasonable interpretations . . . supports the Court's conclusion that the scope of the claim is 'not reasonabl[y] certain[.]'" (alteration in original) (citation omitted)).

The intrinsic evidence provides no guidance on these issues. The specification only uses "simultaneously" once when describing that "more than one source may be accessed simultaneously (*e.g.*, resources from web and local resources, etc.) to be presented on the display device." Ex. 7 ['140 Patent] at 75:57–60. This says nothing about what the term "simultaneously" means as used in the claim and does not resolve the ambiguity inherent in its use in the claim language. Turnbull Decl. ¶ 48.

Further, the terms "transform" and "for presentation, simultaneously with the first content" were added during prosecution to rebut an argument advanced by the examiner related to prior art describing navigating from one web page to a different web page within the same browser tab met

the limitation of "present[ing] . . . the first content in the first window associated with the first tab" followed by "present[ing] . . . the second content in the first window associated with the first tab." Ex. 8 [Amendment A (filed June 5, 2019)]. The applicant added the "simultaneously" language to preclude this reading of the claims, but this amendment has no bearing on whether "simultaneously" modifies "transform" or "presentation," nor does it clarify precisely what "simultaneously" means to one of skill in the art. Turnbull Decl. ¶ 49.

Because "simultaneously" could have any variety of meanings, it should be found indefinite. *U.S. Well Servs.*, No. 6:21-CV-00367-ADA, Dkt. 74 at 18 (Ex. 11).

### C. U.S. Patent No. 10,904,178

The '178 Patent claims relate to chat-based menus, whereby a user of an instant messaging application may enter text or select one of a plurality of menu items in order to send an "attachment request" to a server. The server responds by sending at least one image corresponding to the attachment request. Ex. 9 ['178 Patent] at Claim 1.

Motion Offense asserts claims 1–4, 6, 15, 18, and 19 of the '178 Patent. Motion Offense accuses Google of directly infringing these claims through Google's Dialogflow product.

### 1. "Attachment" ('178 Patent, Claims 1–4, 18, 19)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction is necessary | A portion of a communication that includes data from one communicant to another other than data in the message portion. |

The '178 Patent clearly defines the meaning of "attachment." It states:

> The term "attachment" as used herein refers to a portion of a communication that includes data from one communicant to another other than data in the message portion.

Ex. 9 ['178 Patent] at 15:47–49. The meaning set forth in the patent is consistent with the ordinary meaning of "attachment." Regardless, a patentee can assign any meaning he or she wants to a word without regard to the word's ordinary meaning. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). In contrast to the clearly defined meaning of "attachment," Motion Offense's infringement contentions refer only to data in messages, an embodiment that the patentee expressly excluded. Motion Offense refuses to agree to the definition set out in its own patent's specification. Therefore, there is a dispute about the meaning of this term for resolution by the Court and "attachment" should be construed with the express definition in the specification. *O2 Micro*, 521 F.3d at 1360, 1362.

D.    **U.S. Patent No. 10,949,507**

The '507 Patent claims relate to redirecting users to a native mobile app, whereby HTML content hosted on a website that is affiliated with a native application is accessed via the native application instead of via a web browser. Ex. 10 ['507 Patent] at Claims 1, 42. This method relies on performing an analysis "involving a security criterion, such that a first result of the analysis is indicative of the security criterion being met, and a second result of the analysis is indicative of the security criterion not being met . . . ." *Id.*

Motion Offense asserts claims 1, 3, 12, 15, 21, 26, 27, 34–37, 39, 40, 42, 66, 73, and 74 of the '507 Patent. Motion Offense accuses Google of directly infringing these claims through Google's Android App Links functionality.

1.    **"Security criterion" ('507 Patent, Claims 1, 40, 42, 73)**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction is necessary | Indefinite |

The term "security criterion" is indefinite because this term has no accepted meaning to a POSITA, and the claims, when read in light of the intrinsic evidence, fail to inform a POSITA, with reasonable certainty, about what the term "security criterion" means. Turnbull Decl. ¶¶ 52– 56; *Nautilus*, 572 U.S. at 901.

Claims 1 and 42 recite a method that relies on performing an analysis "involving a security criterion, such that a first result of the analysis is indicative of the security criterion being met, and a second result of the analysis is indicative of the security criterion not being met . . . ." Ex. 10 ['507 Patent] at Claims 1, 42. These claims do not explain what a "security criterion" is; they state only that the HTML content is presented via the native application if the "security criterion" is met, and if it is not met, the content is presented via the web browser. *Id.*; Turnbull Decl. ¶ 53.

The specification does not define or discuss what "security criterion" means but does provide very broad guidance about the meaning of a "criterion" or "criteria." For example, according to the specification:

> Other portions of message may be defined as valid ***criteria*** or in combination as a valid ***criterion*** for an application protocol and/or for a network protocol. A ***criterion*** may identify and/or otherwise may be based on an attribute of a user agent, a user agent client, and/or a service application such as a licensing entity, a network protocol supported, a plug-in, a security setting, a content type of a resource included and/or identified in a request and/or in a response, a user of a user agent and/or of a user agent client, one or more attributes of other user agents and/or user agent clients available for processing the request and/or the response, a brand of web server node included in processing the request and the response, an operating system, a service provider of a service application, a geospatial location, a network location, a date, a time, a duration, an ambient condition, a cost, a performance metric, a power metric, a resource analytics result, a probability and/or other statistic, and a user input—to name a few examples.

Ex. 10 ['507 Patent] at 33:8–25 (emphasis added).

> A user agent and/or user agent client ***criterion*** may be based on a metric. Exemplary metrics include a metric based on a network, a

> memory location such as a cache, authentication, authorization, security, a whitelist, a blacklist, a task, a payment, a purchase, an item or sale, a natural environment, a group, a legal entity, a society, heat, power, light, sound, a nuclear particle, energy, family, a role of user or group, privacy, a government, a network path, a proxy, a network relay, a schema, a detected error, a warning, and the like.

Ex. 10 ['507 Patent] at 72:37–46 (emphasis added). But these disclosures further demonstrate the near limitless range of possibilities for, and unbounded scope of, a "security criterion"—anything from a date or time, to a cost, to a government, or a nuclear particle. A non-exhaustive list of examples does not sufficiently define the bounds of the term. *IQASR LLC v. Wendt Corp.*, 825 F. App'x 900, 906 (Fed. Cir. 2020) ("*non-limiting* examples do not on their own expressly define the bounds—the *limits*—of the claim"); *see also CA, Inc. v. Netflix, Inc.*, No. 2:21-CV-00080-JRG-RSP, 2021 WL 5323413, at *16 (E.D. Tex. Nov. 16, 2021). These extensive, non-exhaustive lists of possibilities provide little guidance to a POSITA, who would remain confused about the meaning of "security criterion." Turnbull Decl. ¶¶ 54–55.

The other claims of the '507 Patent do not define "security criterion" either. For example, Claims 40, 64, 65, and 73, all of which are dependent claims, refer back to a "security criterion." Claim 64 states that the "security criterion involves at least one of a security policy, a security setting, or a security attribute." Claims 40, 65, and 73 state that "the security criterion relates to security by performing an authentication function." But the terms "security policy," "security setting," "security attribute," and "authentication function" are similarly undefined in the '507 Patent and are broad enough to encompass almost anything. Turnbull Decl. ¶ 56. Moreover, a dependent claim is by definition narrower than an independent claim, highlighting the uncertainty about the full scope of "security criterion" in the independent claims.

A term with no ordinary and customary meaning is considered a coined term, and the intrinsic evidence must provide objective boundaries for its scope. *Iridescent Networks, Inc. v.*

*AT&T Mobility, LLC*, 933 F.3d 1345, 1353 (Fed. Cir. 2019). Here, the term "security criterion" has no accepted definition in the art, and the intrinsic evidence provides only non-exhaustive lists of examples of a related term, or claims that use other vague and undefined terms. Because the intrinsic evidence does not provide any objective standard for a POSITA to ascertain, with reasonable certainty, the term's scope, "security criterion" is indefinite. *Nautilus*, 572 U.S. at 901.

## III.    CONCLUSION

The asserted claims are replete with vague limitations, and the specification provides little guidance about their scope. Those undefined limitations leave a POSITA completely uncertain about the scope of the claims. And, where the patents do provide concrete, definitive guidance, Motion Offense has refused to acknowledge it and in fact is taking infringement positions contrary to that guidance. Therefore, Google respectfully requests that the Court adopt its proposed claim constructions.

DATED:  January 27, 2022

Respectfully Submitted,

*/s/ Robert W. Unikel, with permission by*
*Michael E. Jones*

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
POTTER MINTON, P.C.
110 N. College Ave., Suite 500
Tyler, Texas 75702
Tel: (903) 597-8311
Fax: (903) 591-3939

Robert W. Unikel *(Pro Hac Vice)*
robertunikel@paulhastings.com
PAUL HASTINGS LLP
71 South Wacker Drive, 45th Floor
Chicago, IL 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100

Elizabeth Brann (*Pro Hac Vice)*
elizabethbrann@paulhastings.com
Cole Malmberg (*Pro Hac Vice)*
colemalmberg@paulhastings.com
Ariell N. Bratton (*Pro Hac Vice)*
ariellbratton@paulhastings.com
PAUL HASTINGS LLP
4747 Executive Drive, 12th Floor
San Diego, CA 92121
Telephone: (858) 458-3000
Facsimile: (858) 458-3005

Robert R. Laurenzi (*Pro Hac Vice)*
robertlaurenzi@paulhastings.com
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090

*Attorneys for Defendant Google LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 27th day of January, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Michael E. Jones*
Michael E. Jones