IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **MOTION OFFENSE, LLC,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil No. 6:21-cv-00514-ADA** |
| | § | |
| **GOOGLE LLC,** | § | |
| *Defendant.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Google LLC's ("Google" or "Defendant") Motion to Transfer Venue from the Western District of Texas ("WDTX") to the Northern District of California ("NDCA") under 28 U.S.C. § 1404(a). ECF No. 34. The Court carefully considered the relevant facts, applicable law, and the parties' briefs. ECF Nos. 34, 59, 64. The Court's decision turns on whether it should apply traditional Fifth Circuit transfer law or apply the Federal Circuit's interpretations of Fifth Circuit transfer law. This Court cannot ignore or overrule cases from the Federal Circuit. But-for those Federal Circuit cases, this Court **GRANTS** Defendant's Motion to Transfer. All deadlines are **VACATED**. The Court will set a case management conference before transferring the case.

## I.   FACTUAL BACKGROUND

Motion Offense LLC ("Motion Offense" or "Plaintiff") filed its First Amended Complaint against Google and alleged infringement of U.S. Patent Nos. 10,303,353 ("'353 patent"); 10,613,737 ("'737 patent"); 10,803,140; 10,949,507; 10,904,178; and 11,044,215 ("'215 patent") (collectively, "Asserted Patents") on July 23, 2021. ECF No. 7. The Asserted Patents generally describe claims and methods which make data sharing more rapid and efficient. *Id.* ¶¶ 29, 40, 51,

62. For purposes of contesting venue, the parties agree that the "Accused Products" at issue include Google Drive, Backup and Sync, Drive File Stream, Google Drive for Desktop, Google Docs, Google Sheets, Google Slides, Good Docs Editors, Google One, Google Workspace, Android, Chrome, Chrome OS, Dialogflow, Google Cloud, App Links, and Google Play.   ECF No. 64-2 at 1–2.

Motion Offense is a licensing company with an office in Longview, Texas.  ECF No. 56-1 ¶ 5. Motion Offense's only manager is Mr. Andrew Gordon, and he resides in Frisco, Texas. *Id.* ¶¶ 2-5. Both locations are in the Eastern District of Texas. *Id.* Motion Offense is not an OSO-IP subsidiary. ECF No. 56-2 ¶¶ 3-4; ECF No. 4. Mr. Kevin Zilka has knowledge about the prosecution of the Asserted Patents but is unaffiliated with Motion Offense. ECF No. 56-2 ¶¶ 3-4, 9.

At Google's headquarters in Mountain View, California, Google employs about 45% or 39,914 of its U.S. employees. ECF No. 35-1 ¶ 2. Google employs 10,918 people in other offices in the NDCA. *Id.* Google also has an office in Austin, Texas, where it employs about 2% or 1,800 of its U.S. employees. *Id.* Google's engineering teams worked on the Google Drive, Google Drive for Desktop, Dialogflow, Site Isolation, and App Links products in Washington State; Ontario, California; the United Kingdom; New York; Colorado; the NDCA; and elsewhere in California. *Id.* ¶¶ 5-6. One Google engineer, Mr. Marlow, works in Austin, Texas on the Google Cloud Professional Services Team, which uses Dialogflow. *Id.* ¶ 7. Google also has an unknown quantity of engineers in Austin who work on Android, Google Play, Google Cloud, and other accused products in the G Suite. ECF No. 57-1 at 2. Google also has an unknown quantity of finance and marketing staff in Austin. *Id.*

This case is one of three co-pending cases in this Court asserting three of the same patents: the '353, '737 and '215 patents. Motion Offense has two consolidated cases against Dropbox, Inc.

("Dropbox Cases") asserting those three overlapping patents before this Court in civil action 6:21-cv-00758-ADA.

## II.    THE ROPE DECLARATION IS CREDIBLE BUT LIMITED

Plaintiff challenges the reliability of Google's venue declarant, Mr. Andrew Rope. ECF No. 59 at 3. Plaintiff identifies four problems with Mr. Rope's declaration: 1) it implies but omits cumulative employees or evidence in Texas, 2) it operates as a mouthpiece for information fed by Google's counsel, 3) it contradicts other evidence, and 4) it provides an incomplete analysis by omitting many accused products. *Id.* at 2–3.  In response, Google argues that Mr. Rope completed a comprehensive, multi-day investigation during which he interviewed every employee named in his declaration and individuals further identified by those employees (well-more than twenty individuals) to determine "who they are, what they work on, [] the folks that they work with," and where they are located. ECF No. 64 at 2 (citing ECF No. 64-2 at 43:17-21, 6:11-20, 7:24-8:6; 10:3-11:10, 11:15-19, 45:10-25, 100:5-16).

Vague, attorney-driven venue declarations frequently accompany transfer motions filed in this Court. *See, e.g., Scramoge Tech. Ltd. v. Apple Inc.*, No. 6:21-CV-00579-ADA, 2022 WL 1667561, at *2–4 (W.D. Tex. May 25, 2022). These declarations offer conclusions derived from limited, attorney-supplied facts without ever explaining the investigation conducted to fully uncover the facts. The Court has grown weary of venue declarants who investigate only facts that support transfer and then, after failing to investigate adverse facts, simply declare that they have no personal knowledge of any facts that weigh against transfer. It especially concerns the Court when a party opposing transfer uncovers evidence favoring transfer that venue declarants should have uncovered in a diligent investigation.

After reviewing the entirety of his deposition transcript, the Court finds that Mr. Rope completed a sufficient investigation for the products that he discusses. ECF No. 56-5. He conducted a multi-day investigation, interviewed more than twenty individuals, and attempted to answer his deposition questions directly rather than evasively. *Id.* Although Mr. Rope received some information from counsel and routinely received warnings not to divulge information from counsel, he nonetheless conducted an independent investigation. *Id.* His investigation uncovered evidence that weighs against transfer, such as the witness Patrick Marlow in Austin. ECF No. 35-1 ¶ 7. Mr. Rope is a Senior Legal Project Manager at Google and conducts these types of investigations as part of his full-time job. ECF No. 35-1 ¶ 1. Although Mr. Rope repeatedly provides declarations in support of Google's transfer motions, the still-reasonable frequency of these declarations indicates that Mr. Rope dedicates a reasonable amount of time to investigating the facts. Thus, the Court declines to find that Mr. Rope failed to conduct a reasonable investigation into the facts.

Mr. Rope understands the Plaintiff accused Google Drive, Google Drive for Desktop, Dialogflow, Site Isolation, and App Links of patent infringement. ECF No. 35-1 ¶ 5. For purposes of venue discovery, the parties agreed that the accused products include Google Drive, Backup and Sync, Drive File Stream, Google Drive for Desktop, Google Docs, Google Sheets, Google Slides, Good Docs Editors, Google One, Google Workspace, Android, Chrome, Chrome OS, Dialogflow, Google Cloud, App Links, and Google Play. ECF No. 64-2 at 1–2. Because Mr. Rope did not investigate all accused products, he appropriately limited the scope of his declaration. In this case, Plaintiff's evidence of Google employees in Texas does not contradict Mr. Rope's declaration because Mr. Rope limited his declaration to just five of the many relevant products. *Compare* ECF No. 35 ¶¶ 5, 8, *with* ECF No. 57-1 at 2.

As to whether there are individuals with "duplicative" knowledge here in Texas, Mr. Rope has made clear it is that Mr. Marlow in Austin who has duplicative knowledge. ECF No. 35 ¶ 7. Otherwise, Mr. Rope's investigation left him with no awareness of any other Google engineers or engineering managers in Texas who work on the five accused products that Mr. Rope investigated. ECF No. 35 ¶¶ 7-8.

Finally, the Court recognizes that Mr. Rope's declaration is limited.  He investigated only technical employees of Google and performed no investigation of those in finance, marketing, and other non-technical departments. ECF No. 56-6 at 11:20–12:11. He also limited his investigation to just five of the many accused products. Motion Offense also calls out crafty wording in Google's discovery and suggests that Google withheld information. ECF No. 59 at 10-11. Because neither party provides this missing information about non-technical employees and the specific distribution of Google's engineers to the Court, the Court is unable to weigh it in the transfer analysis. Parties should timely and explicitly seek appropriate relief if they believe the opposing party failed to provide discovery.

### III.    LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented. 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The threshold question under Section 1404(a) is whether a civil action might have been brought in the transfer destination venue. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Volkswagen I*, 371 F.3d at 203.

The burden to prove that a case should be transferred for convenience falls on the moving party. *Volkswagen II*, 545 F.3d at 314. The burden that a movant must carry is not merely that the alternative venue is more convenient, but that it is clearly more convenient. *Id.* at 315. Although the plaintiff's choice of forum is not a separate factor entitled to special weight, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *Id.* at 314-315. While "clearly more convenient" is not necessarily equivalent to "clear and convincing," the moving party "must show materially more than a mere

preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

## IV.   MOTION OFFENSE'S CHALLENGES TO THE
## FEDERAL CIRCUIT'S APPLICATION OF FIFTH CIRCUIT LAW

Motion Offense challenges the Federal Circuit's unpublished cases that interpret Fifth Circuit transfer law. ECF No. 59, *passim*. According to Motion Offense, the "unpublished Federal Circuit cases Google cites are not binding. It also defies common sense and the law." *Id.* at 9 (internal citations omitted). Motion Offense argues that only "Fifth Circuit precedent controls. Any conflicting precedent from another sister Circuit yields to that of this Circuit. The Federal Circuit cannot bind this Court or the Fifth Circuit on regional law." ECF No. 59 at 3–4 (citations omitted). A decision "issued by another circuit is not binding" on the Fifth Circuit. *Id.* at 9 (citing *United States v. Rodriguez*, 660 F.3d 231, 233 (5th Cir. 2011)). Thus, Motion Offense implores this Court to strictly apply only Fifth Circuit law.

However, this Court cannot and does not overrule the reasoning of the Federal Circuit in a patent case. Although the Federal Circuit issues unpublished, nonprecedential transfer opinions, the Federal Circuit frequently cites these opinions as though they precedentially interpret Fifth Circuit law. The Fifth Circuit repeatedly cites *Volkswagen I* and *Volkswagen II* as the authority being followed.

Motion Offense has explicitly made its arguments, but the arguments are more appropriately reserved for a higher court. In the following sections, the Court identifies the aspects of transfer law challenged by Motion Offense, but this Court must follow the Federal Circuit's line of cases on Fifth Circuit transfer law.

## V.    ANALYSIS

### 1.  Plaintiff could have brought this case in the Northern District of California.

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue. The parties do not dispute that this case could have been filed in the NDCA. This Court finds that venue would have been proper in the NDCA. Thus, the Court proceeds with its analysis of the private and public interest factors to determine if the NDCA is clearly more convenient than the WDTX.

### 2.  The private interest factors favor transfer overall

Of the private interest factors, one weighs heavily in favor of transfer, one weighs strongly in favor of transfer, one weighs in favor of transfer, and one weighs against transfer. Overall, the private interest factors clearly favor transfer.

### a.  The availability of compulsory process to secure the attendance of witnesses weighs heavily in favor of transfer.

For this factor, the Court focuses on whether the "subpoena power of a district court can be used to compel attendance of witnesses." *In re Horseshoe Ent.*, 337 F.3d 429, 431 (5th Cir. 2003). The Federal Rules permit a court to subpoena a witness to attend trial only "within 100 miles of where the person resides, is employed, or regularly transacts business in person" or "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." FED. R. CIV. P. 45(c)(1).

Google urges this Court to follow recent Federal Circuit cases. ECF No. 34 at 11-12. Under these cases, "when there is no indication that the witness is willing," the Court must presume that its subpoena power will be necessary to secure the witnesses' attendance. *In re DISH Network LLC*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021). "This factor will weigh

heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014). The Federal Circuit assigns this weight even when the movant simply lists the third-party witnesses, without reason to suggest they are unwilling to travel. *Id.* at 891–92 (dissenting).

Motion Offense argues, "That is not the law in the Fifth Circuit." ECF No. 59 at 13. Motion Offense argues that Google has the burden of identifying the witnesses it intends to call and establishing that those witnesses are unwilling to testify. *Id.* at 13–14. Otherwise, under Fifth Circuit law, "[w]hen no witness' unwillingness has been alleged or shown, a district court should not attach much weight to the compulsory process factor." *Indusoft, Inc. v. Taccolini*, 560 F. App'x 245, 249 (5th Cir. 2014), *as revised* (Mar. 20, 2014). District Courts in every state in the Fifth Circuit require a showing of unwillingness, otherwise they give this factor little or no weight at all. *See, e.g., Alliance Transportation and Logistics, LLC v. G&J Truck Sales, Inc.*, No. 3:20-CV-3451-B, 2021 WL 5882820, at *3 (N.D. Tex. Dec. 13, 2021) (citing cases); *U.S. United Ocean Services, LLC v. Powerhouse Diesel Services, Inc.*, 932 F.Supp.2d 717, 730-32 (E.D. La. Mar. 11, 2013) (finding factor neutral absent evidence of unwillingness); *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC*, No. 3:09-CV-0488-D, 2009 WL 2634860, at *5 (N.D. Tex. Aug. 26, 2009) (finding factor neutral absent evidence of unwillingness); *Equal Emp. Opportunity Comm'n v. Faurecia Automotive Seating, LLC.*, No. 4:16-CV-199-DMB-JVM, 2017 WL 4158624, at *4 (N.D. Miss. Sept. 19, 2017) (finding factor neutral absent evidence of unwillingness).

Here, regardless of the exact formulation of law, the Court finds that any Dropbox witnesses should not be considered under this factor. Because both Dropbox and Google are

defending against the same patents, Dropbox is almost certain to happily send any Dropbox employees Google calls to testify against the validity of the commonly asserted patents.

Google presents the Court with invalidity contentions that identify third party witnesses. ECF No. 34 at 4. Altogether, the invalidity contentions rely on prior art that lists thirteen witnesses within the subpoena power of the NDCA and three witnesses in Texas. ECF No. 64 at 4. Google has no evidence that these witnesses are unwilling to testify and instead relies on the Federal Circuit presumption that these witnesses will not willingly testify. ECF No. 34 at 4, 11–12; ECF No. 64 at 4.

Under only Fifth Circuit law, this Court would have weighed the compulsory process factor in favor of transfer and given it little or no weight because Google has not carried its burden to show that the third-party prior art witnesses are unwilling to testify at trial to defend their titles as the earlier inventor. However, the Federal Circuit recently reversed this Court when this Court "erroneously discounted those third parties when [this Court] faulted [the movant] for not identifying any specific employees" of third-party companies such that the movant could not show that any specific employees were unwilling to testify. *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *3 (Fed. Cir. Nov. 15, 2021). The Federal Circuit has repeatedly presumed third-party unwillingness and weighed this factor heavily in favor of transfer after the Fifth Circuit issued its *Indusoft* decision. *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *3 (Fed. Cir. Nov. 15, 2021) (citing *In re Apple, Inc.*, 581 F. App'x at 889); *Indusoft*, 560 F. App'x at 249.

In conclusion, this Court follows the Federal Circuit cases and must presume the third-party prior art witnesses in California are unwilling to testify, and for that reason, this Court must weigh this factor heavily in favor of transfer.

**b.  The relative ease of access to sources of proof favors transfer.**

Under this factor, the Court determines which forum provides relatively easier access to sources of proof. The fact that "access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." *Volkswagen II*, 545 F.3d at 316.

Motion Offense keeps its electronic and paper records in Texas. ECF No. 56-1, ¶ 7. Mr. Patrick Caldwell resides in Dallas, Texas, oversaw prosecution of the Asserted Patents, and keeps his electronic records and physical records near Dallas, Texas. ECF No. 56-4 ¶¶ 4-7; ECF No. 59 at 9. The record remains unclear as to how much evidence Motion Offense and Patrick Caldwell have.

Google produced 6,336 documents in this case. ECF No. 64 at 5 n.3. These documents are normally created and maintained by Google's employees who work on the accused products and services. ECF No. 34 at 10. Thus, Google's documents for five products are distributed with its engineers among Washington State; Ontario, Canada; the United Kingdom; New York; Colorado; the NDCA; and elsewhere in California. ECF No. 35-1 ¶ 6. Mr. Marlowe maintains and/or accesses some of the same evidence in Austin, Texas. *Id.* ¶ 7. Google does not know exactly where Google's electronic documents are stored, but Google admits they are equally accessible from both the WDTX and the NDCA. ECF No. 56-5 at 49:9-14, 51:7-24.

Motion Offense argues that it is Google, the movant, who "must show that transfer will result in easier access to sources of proof." ECF No. 59. In the Fifth Circuit, "the movant has the burden to establish good cause, which requires an actual showing of the existence of relevant sources of proof, not merely an expression that some sources likely exist in the prospective forum." *Def. Distributed v. Bruck*, 30 F.4th 414, 434 (5th Cir. 2022) (citing *Volkswagen II*, 545 F.3d at

315). Moreover, Motion Offense argues that Mr. Rope admitted a lack of any *relative* difficulty in accessing electronic documents in either the WDTX or the NDCA with modern internet access. ECF No. 59 at 9 (relying on Mr. Rope's deposition admissions).

Google urges this Court to rely on the Federal Circuit's presumption that Google, the movant, has more evidence. ECF No. 34 (citing *Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Genentech*, 566 F.3d at 1345. Google argues that when applying this presumption, the Federal Circuit has already ruled that there is "no sound basis for the district court having weighed the sources-of-proof factor against transfer; if anything, that factor weighs in favor of transfer." ECF No. 34 at 11; *In re Google LLC*, No. 2021-171, 2021 WL 4592280, at *7 (Fed. Cir. Oct. 6, 2021).

When applying only the Fifth Circuit cases as urged by Motion Offense, this factor weighs against transfer due to the imposition of the burden on the movant. Because Google does not know where Google's electronic documents are stored from among Washington State, Ontario, the United Kingdom, New York, Colorado, the NDCA, elsewhere in California, or in Texas, Google has failed to carry the movant's burden of showing that transfer will result in easier access to sources of proof. ECF No. 56-5 at 49:9-14. Moreover, because Google testified that those electronic documents are equally accessible from both the WDTX and the NDCA, this testimony should have ended the Court's inquiry about into the *relative* ease of access to Google's documents under the original inquiry. *Id.* at 51:7-24. Then, the Court is left with weighing only Plaintiff's evidence in Longview and Frisco, Texas, and the Plaintiff's evidence causes this factor to weigh against transfer.

However, the Federal Circuit has made clear that under this very same fact pattern, this factor weighs in favor of transfer. *In re Google LLC*, 2021 WL 4592280, at *7. In that case, the Federal Circuit began the analysis by noting that the Plaintiff's evidence in Texas lies beyond of the WDTX, as is the case here for Motion Offense's evidence in Longview and Frisco. *Id.* at *6. Then, the Federal Circuit applied the presumption that "the bulk of the evidence would likely be coming from the accused infringer." *Id.* The Federal Circuit then found that some of Google's documents were stored within the NDCA and some documents were stored outside of both forums, similar to the present situation, before holding "that the fact that some evidence is stored in places outside both forums does not weigh against transfer." *Id.* at *7. Finally, the Federal Circuit rejected the argument that equal access to electronic records answers the Fifth Circuit inquiry into the relative ease of access to evidence from different districts. *Id.*

In conclusion, because the facts and arguments in this case match so closely with *In re Google LLC*, 2021 WL 4592280, this Court is bound to follow the Federal Circuit and find that, "if anything, that factor weighs in favor of transfer." *Id.* at *7.

### c. The cost of attendance and convenience for willing witnesses strongly favors transfer.

The third private interest factor is the cost of attendance and convenience for willing witnesses. *Volkswagen II*, 545 F.3d at 316–17. The Fifth Circuit described the "100-mile rule" that it uses as follows:

> "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." 371 F.3d at 204–05. We said, further, that it is an "obvious conclusion" that it is more convenient for witnesses to testify at home and that "[a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from

their regular employment." *Id.* at 205. The district court disregarded our precedent relating to the 100–mile rule.

*Volkswagen II*, 545 F.3d at 317.

Google has engineers distributed among Washington State; Ontario, Canada; the United Kingdom; New York; Colorado; the NDCA; and elsewhere in California. ECF No. 35-1 ¶¶ 5-6. Of these, Mr. Winson Chiu is in Mountain View, California. *Id.* ¶ 6. Google has one confirmed relevant engineer, Mr. Marlow, in Austin. *Id.* ¶ 7. Google's other engineers are unnamed and unnumbered. *Id.* The location of Google's non-technical personnel remains unknown. Google also has an unknown quantity of engineers who work on Android, accused products in the G Suite, Google Play, and Google Cloud in Austin, as well as an unknown quantity of finance and marketing staff. ECF No. 57-1 at 2.

Mr. Zilka resides in the NDCA. ECF No. 34 at 8. Mr. Zilka is unrelated to Motion Offense but has knowledge about prosecution history. ECF No. 56-2. Three relevant witnesses reside closer to this Court: Mr. Gordon in Frisco, Mr. Morris in Georgia, and Mr. Caldwell in Dallas. ECF No. 34 at 9. Both Mr. Gordon and Mr. Caldwell can drive to the courthouse in Waco in less than two hours but must fly halfway across the country to the courthouse in the NDCA. ECF No. 56-1 ¶¶ 9-10; ECF No. 56-4 ¶ 9. Mr. Morris is unwilling to fly anywhere, willing to drive about 1,200 miles for 18 hours to the WDTX, unwilling to drive 2,8000 miles to the NDCA, and willing to testify remotely if required to do so in the NDCA. 56-3 ¶¶ 5-7. Google offered no evidence that the NDCA permits remote testimony. When COVID shut down courthouses across the country, this Court held trials with remote witness testimony and continues to permit remote trial testimony, including for Google's own witnesses. *See, e.g., EcoFactor, Inc. v. Google LLC*, No. 6:20-cv-00075-ADA (W.D. Tex. Jan. 12, 2022) ECF No. 176.

Waco lacks a major airport. ECF No. 34 at 9. Any witness flying to a major airport in Austin or Dallas will need to travel by car to Waco, requiring an additional one-and-a-half to two hours. Google's evidence about flight times to Waco does not reflect this more practical mode of ground transportation.

As to the actual cost of trial, Motion Offense provides uncontroverted evidence that holding a trial in the NDCA is far more expensive per travelling witness. Bloomberg reported that San Francisco is "the world's most expensive place for visitors to spend the night" based on data from Expedia. ECF No. 57-17. Rates of three to five start hotels in Waco cost $109 to $218 per night. ECF No. 57-13. Comparable hotels in San Francisco cost about $300 to $1000 per night. This difference ranges from about $191 on the low end to $782 at the high end per day. The difference in per diem rates adds another $181 per day. ECF No. 57-15; ECF No. 57-16.

Motion Offense directly answers the Fifth Circuit inquiry by providing evidence for calculating the actual costs of attendance of willing witnesses. Motion Offense has shown that every willing witness who lives beyond day-trip range of the NDCA courthouse will find it more expensive to attend trial in the NDCA at the rate of $372-$963 per day for lodging and meals. This affects all of Google's employees in Washington State; Ontario, Canada; the United Kingdom; New York; Colorado; southern California, and Austin, Texas, and their inconvenience would offset the convenience of even a large quantity of Google's engineers who live in the NDCA. This expense also inconveniences Mr. Gordon, Mr. Caldwell, and Mr. Marlow. Thus, Motion Offense urges this Court to find that this factor is either neutral or against transfer. ECF No. 59 at 9. Moreover, when applying the Fifth Circuit's 100-mile rule, the unknown quantity of Google's employees in Ontario, Canada; New York; the United Kingdom; and Austin, Texas will find this Court more convenient because witnesses from these locations will travel a shorter distance to

Waco. They would balance out any of the unknown quantity of Google's engineers in Washington State and in southern California who would find the NDCA more convenient under the 100-mile rule. Overall, this factor would have weighed against transfer due to the sheer expense of many scattered witnesses who would rather not pay an extra $372-$963 per day in San Francisco.

Google argues that this Court should follow the Federal Circuit line of cases including two cases involving Google where the Federal Circuit held that this factor "strongly" favors transfer. ECF No. 34 (citing *In re Google LLC*, 2021 WL 4427899, at *4 and *In re Google LLC*, 2021 WL 4592280, at *5). In those cases, the Federal Circuit rejected a rigid application of the Fifth Circuit's 100-mile rule when witnesses would be inconvenienced by having to leave home to attend trial because those witnesses will be required travel a significant distance no matter where they testify. *In re Google LLC*, 2021 WL 4427899, at *4. According to the Federal Circuit, instead of distances beyond 100 miles, "the inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google LLC*, 2021 WL 4427899, at *4. So, when witnesses in previous *In re Google* cases needed to travel to either the NDCA or Waco, the Federal Circuit reasoned that when applying the 100-mile rule, "time is a more important metric than distance" and found those witnesses' inconvenience to be equal. *In re Google LLC*, 2021 WL 4427899, at *4; *In re Google LLC*, 2021 WL 4592280, at *5; *see also In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *3 (Fed. Cir. Apr. 22, 2022) (rejecting this Court's reasoning that a witnesses in Florida would find it more convenient to testify in Waco because Texas sits halfway between Florida and California).

So, this Court must use the Federal Circuit's inquiry asking whether the witnesses travelling to a distant forum are required to be away from their homes and work for an extended

period of time. Under this inquiry, Google's engineers in Ontario, Canada; the United Kingdom; New York; and Colorado will find it equally inconvenient to travel to either courthouse because they will need to make an overnight trip regardless of where they go. ECF No. 34 at 8. The Federal Circuit held that Mr. Morris will find it only "marginally less" convenient to travel to the NDCA instead of to Waco, Texas. *In re Google LLC*, 2021 WL 4592280, at *5. Mr. Gordon and Mr. Marlow will find it less convenient to fly to the NDCA than to drive to Waco. Mr. Chiu will be inconvenienced by flying to Texas from the NDCA. The combined conveniences of Mr. Morris, Mr. Gordon, and Mr. Marlow outweigh the convenience of Mr. Chiu. Without mores specific evidence, the Court can only estimate the conveniences of the remaining groups of witnesses. There are an unknown number of Google engineers in the NDCA who would find trial in the NDCA more convenient. Their convenience balances out an unknown number of Google's engineers, finance employees, and marketing employees in Austin who would find driving to Waco more convenient. After canceling out all the other groups against each other, this leaves an unknown number of Google's engineers in Washington State and southern California would find it more convenient to travel to the NDCA. These engineers likely outnumber Mr. Morris, Mr. Gordon, and Mr. Marlow.

Thus, despite Motion Offense's arguments under the "rigid" Fifth Circuit inquiry showing the greater witness travel distance and costs for trial in the NDCA, this Court must follow the Federal Circuit's cases and weigh "the convenience-to-witnesses factor strongly in favor of transfer." *In re Google LLC*, 2021 WL 4427899, at *5.

    **d.  All other practical problems that make trial of a case easy, expeditious, and inexpensive weighs against transfer.**

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315.

Motion Offense filed the Dropbox Cases shortly after filing this case. The Dropbox Cases have no pending motion to transfer, so this Court will keep them through trial. From the Dropbox Cases, this Court has significant familiarity with the common patents and issues because the Court held claim construction, decided a summary judgment motion, and is considering pending substantive motions that involve the same three patents. Fact discovery is nearly over, and trial in the Dropbox Cases will begin in January of 2023. The Dropbox Cases also involve two additional patents in the same family. The overlap here of issues between these cases is substantial.

Motion Offense argues that this factor weighs heavily in favor of transfer based on older, published decisions from the Fifth Circuit, Federal Circuit, and Supreme Court. The Fifth Circuit ruled that "the existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice." *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*Volkswagen III*") (quoting *Continental Grain Co. v. The FBL*-585, 364 U.S. 19, 26 (1960) ("[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.")). "[W]here there is a co-pending litigation . . . involving the same patent-in-suit, . . . pertaining to the same underlying technology and accusing similar services, . . . the Federal Circuit cannot say the trial court clearly abuses its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d at 1346 n.3

(Fed. Cir. 2010). Motion Offense frames its analysis following the Fifth Circuit's original inquiry of whether transfer would or create or mitigate "practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen I*, 371 F.3d at 203.

Google urges this Court to follow recent, unpublished Federal Circuit cases. In those cases, the Federal Circuit ruled it is error to "allow the co-pending litigation to dominate the analysis." *In re Google*, 2021 WL 5292267, at *3. Thus, this single, non-dispositive factor does not outweigh multiple other factors. *In re Netscout Sys.*, No. 2021-173, 2021 WL 4771756, at *5 (Fed. Cir. Oct. 13, 2021); *see In re Apple, Inc.*, 581 F. App'x at 893 (dissenting). Google reminds this Court that the Federal Circuit deems the Fifth Circuit's past concerns of judicial efficiency "overstated." ECF No. 34 at 12 (citing *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021)). Google also argues that the law prohibits this Court from even considering the co-pending Dropbox Cases because they did not exist at the time of filing. ECF No. 64 at 4 (citing *Netscout*, 2021 WL 4771756, at *4); *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013). Thus, Google argues that this factor should be neutral in view of the most recent Federal Circuit cases. ECF No. 64 at 4.

As to whether this Court may consider cases that did not exist at the time of filing, the Federal Circuit's nonprecedential analysis interpretation overextends *Hoffman* because the Federal Circuit has not yet directly addressed the verb tense in the statutory language itself. *Lynk Labs, Inc. v. Home Depot USA, Inc.*, No. 6:21-CV-00097-ADA, 2022 WL 1593366, at *6 (W.D. Tex. May 19, 2022) (distinguishing the argument in *Hoffman v. Blaski*, 363 U.S. 335, 342–43 (1960)). *Hoffman* held that an action "might have been brought" only in a forum where venue, personal jurisdiction, and subject matter jurisdiction *were* appropriate when the plaintiff filed its complaint when conducting the preliminary transfer inquiry. *Hoffman*, 363 U.S. at 342–43. The

"convenience" clause of § 1404(a) includes no comparable language mandating that courts look only backward when engaging in the private and public transfer factor analysis. Although the Federal Circuit has opined on the interpretation of *Hoffman*, the Federal Circuit has yet to address this specific analysis of verb tense in the applicable statute.

Therefore, this Court will consider Offense Motion's co-pending actions against Dropbox concerning the same and related asserted patents to those in this case. This Court's familiarity with the overlapping patents, prior art, and related accused products would allow this Court to more quickly dispose of similar arguments that arise in this case, and keeping this case will avoid the possibility of issuing rulings that conflict with rulings from another court.

In assigning weight to this factor, the Court would have given this factor paramount weight in view of the Fifth Circuit instruction to give this factor "paramount consideration" based on Supreme Court authority. *Volkswagen III*, 566 F.3d at 1351 (citing and quoting *Continental*, 364 U.S. at 26). But because the most recent Federal Circuit decisions deem the judicial efficiency concern "overstated" and ruled that "[a]ny judicial economy considerations would be insufficient to outweigh the clear benefits of transfer," the Federal Circuit has overruled this Court's ability to give this factor paramount weight. *Samsung*, 2 F.4th at 1379; *Netscout*, 2021 WL 4771756, at *5.

Thus, the Court finds that this factor weighs against transfer but can only assign an ordinary weight to this factor.

### 3.  The public interest factors are neutral overall

Two public interest factors are neutral. When following Federal Circuit cases, the administrative difficulties factor weighs against transfer, and that factor counterbalances the local interest factor that weighs in favor of transfer, thereby making the public interest factors neutral overall.

### a. Administrative difficulties flowing from Court congestion weigh against transfer.

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963); *Parkervision, Inc. v. Intel Corp.*, No. 6:20-CV-00108, 2021 WL 401989, at *6 (W.D. Tex. Jan. 26, 2021). The Court considers the "speed with which a case can come to trial and be resolved." *In re Genentech, Inc.*, 566 F.3d at 1347. Court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.* The Federal Circuit measures court congestion by the time to trial for the transferor court and the transferee court. *Id.* 1347.

Motion Offense argues that this Court reaches trial faster, in about 26 months for patent cases, compared to 45 months in the NDCA as of September 2021. ECF No. 59 at 14; ECF No. 57-2 at 46-47; ECF No. 57-3 at 39-40. The overall time to termination in the past five years is 13.2 months, compared to 7.2 months in this Court. ECF No. 59 at 14; ECF No. 57-3 at 19; ECF No. 57-2 at 20. Based on these statistics, Motion Offense argues that this Court is the faster forum and that the NDCA is congested.

Google argues that this Court has more cases. ECF No. 13. Google also argues it has more recent data for civil cases. ECF No. 64 (citing ECF No. 65-2). These statistics show a 31.1 month time to general civil trials in the NDCA compared to 27.2 months in the entire WDTX—a difference of about 4 months. ECF No. 65-2. Finally, Google argues that the Federal Circuit has indicated that there is not a significant difference between WDTX and NDCA in terms of relative

congestion. ECF No. 64 at 5 (citing *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *4 (Fed. Cir. Nov. 15, 2021)).

Google asks this Court to follow the Federal Circuit's decision that "the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics." *In re Apple Inc*., 2021 WL 5291804, at *4 (quoting *In re Juniper Networks*, 14 F.4th at 1322). A few months ago, this Court followed this reasoning and found this factor was neutral. *LoganTree LP v. Apple Inc.*, No. 6:21-CV-00397-ADA, 2022 WL 1491097, at *7 (W.D. Tex. May 11, 2022).

Motion Offense relies on the precedential Federal Circuit case *In re Genentech*. 566 F.3d at 1347. There, the Federal Circuit relied on statistics showing that cases reach disposition in just 7.4 months in the NDCA compared to 9.7 months in the Eastern District of Texas, a difference of less than three months. *Id.* The Federal Circuit also considered faster trial times in the Eastern District of Texas of 18.4 months compared to the 25.5 month trial time in the NDCA. *Id.* Ultimately, the Federal Circuit did not disturb the lower court's finding that it could dispose of the case more quickly. *Id.*

The Court declines to adopt Google's suggestion that, as a durable rule, that there are no longer any significant differences in caseload or time-to-trial statistics between the WDTX and the NDCA. The Court follows precedent when the same law applies to the same facts and the same arguments. The underlying statistics continuously change. Rarely will the statistics from one decision remain unchanged by the time parties cite it through the briefing process. The defendant in *Juniper Networks* filed its brief in November of 2020 and relied on congestion statistics from 2019. Juniper Networks, Inc.'s Opposed Motion to Transfer Venue to the Northern District of

California at 11–12, *WSOU Investments LLC v. Juniper Networks, Inc.*, 6:20-cv-00812-ADA (W.D. Tex. Nov. 25, 2020), ECF No. 19.

This Court agrees with Motion Offense that the evidence shows that this Court is less congested. Both the time-to-trial and time-to-termination statistics show that this Court has an established history of both reaching trial faster and of disposing of cases faster. For patent cases, this Waco Court reaches trial about 19 months faster and otherwise terminates cases 6 month faster. Google's evidence regarding *all civil* cases is overinclusive and does not accurately represent the time to trial for patent cases. ECF No. 65-2. This Court implemented an Order Governing Proceedings in Patent Cases ("OGP") that implements streamlined procedures to prevent patent cases from congesting its docket. Expedited discovery dispute procedures, a predictable schedule, and other procedures in the OGP enable this Court to prevent patent cases from congesting its docket. Indeed, the Court's OGP has kept patent cases on track despite their complexity compared to other civil cases.

Despite this Court's larger patent caseload, this Court has consistently avoided congestion and reached trials faster than the NDCA, typically in about two years from case filings. *See, e.g., MV3 Partners v. Roku, Inc.,* 6:18-cv-00308-ADA (W.D. Tex., filed Oct. 16, 2018) (23.7 months from case filing to trial); *CloudofChange, LLC*, *v. NCR Corp.*, No. 6:19-cv-00513-ADA (W.D. Tex., filed August 30, 2019) (20.3 months from case filing to trial); *VLSI Tech. LLC v. Intel Corp.*, No. 6:21-cv-00057-ADA (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case filing to trial); *Freshub, Inc. v. Amazon.Com Inc.*, No. 6:21-cv-00511-ADA (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc*., No. 6:19-cv-00044-ADA (W.D. Tex., filed Feb. 8, 2019) (25.9 months from case filing to trial); *Profectus Tech. LLC v. Google LLC*, 6:20-cv-00101-ADA (W.D. Tex., filed Feb. 10, 2020) (19.6 months from case filing to trial);

*Jiaxing Super Lighting v. CH Lighting Tech.*, 6:20-cv-00018-ADA (W.D. Tex., filed Jan. 10, 2020) (21.7 months from case filing to trial); *VideoShare LLC v. Google LLC*, 6:19-cv-663-ADA (W.D. Tex., filed Nov. 15, 2019) (23.8 months from case filing to trial); *NCS Multistage Inc. v. Nine Energy Services, Inc.*, No. 6:20-cv-00277-ADA (W.D. Tex., filed Mar. 24, 2020) (21.8 months from case filing to trial); *EcoFactor, Inc. v. Google LLC*, No. 6:20-cv-00075-ADA (W.D. Tex., filed Jan. 31, 2020) (24 months from case filing to trial); *Densys Ltd. v. 3Shape Trio A/S*, 6:19-cv-00680-ADA (W.D. Tex., filed Nov. 26, 2019) (28.3 months from case filing to trial); *Appliance Computing III, Inc. v. Redfin Corp.*, No. 6:20-cv-00376-ADA (W.D. Tex., filed May 11, 2020) (24 months from case filing to trial); *Caddo Sys. Inc., v. Microchip Tech. Inc.*, No. 6:20-cv-00245-ADA (W.D. Tex., filed March 27, 2020) (26.5 months from case filing to trial); *SunStone Information Def., Inc. v. International Business Machines Corp.*, No. 6:20-cv-1033-ADA (W.D. Tex., filed Nov. 9, 2020) (21.0 months from case filing to trial); *NCS Multistage Inc. v. TCO Products Inc.*, No. 6:20-cv-00622-ADA (W.D. Tex., filed Sept. 9, 2020) (23.4 months from case filing to trial).

Based on the evidence presented, this Court finds that WDTX has a faster time to trial and a faster time for disposing of cases without trials, so this Court is less congested than the NDCA. Plaintiff's evidence shows that the NDCA takes about 45 months before holding a patent trial, whereas this Court averages about 24-26 months—a difference of about one and a half years. ECF No. 57-2 at 2; ECF No. 57-3 at 2. The Federal Circuit has repeatedly deemed this factor the most speculative. With this guidance, the Court weighs this as a single factor against transfer, and this factor does not outweigh multiple other factors.

### b. The local interest in having localized interests decided at home weighs in favor of transfer.

The Fifth Circuit follows the Supreme Court, which described the local interest factor as determining whether there is a "local interest in having localized interests decided at home." *Volkswagen I* (citing *Piper Aircraft*, 454 U.S. at 241 n.6). Thus, the Fifth Circuit considers "the controversies and events giving rise to a case," including the location of the plaintiff. *Volkswagen II*, 545 F.3d at 317–18. The Fifth Circuit found it error to disregard the fact that "not one of the plaintiffs has ever lived in the Marshall Division." *Id.*

Here, there is no evidence that the Plaintiff Motion Offense or Mr. Gordon has ever lived in the NDCA. Motion Offense's sole place of business is in Longview, Texas, in the Eastern District of Texas. ECF No. 59 at 1; ECF No. 56-1 ¶ 5. Motion Offense's single member and partner, Mr. Gordon, sometimes works in Motion Offense's Longview office but more often works from his home office in Frisco, Texas. ECF No. 59 at 1; ECF No. 56-1 ¶¶ 2, 4, 5, 7, 8. Both Motion Offense and Google are Delaware entities that have a home in Texas. ECF No. 7 ¶ 2; ECF No. 34-2.

Google has a headquarters in the NDCA. As discussed in the background, Google's employees worked on the accused products both within the NDCA and beyond the NDCA. Google has one relevant engineer in Austin, Texas. Additionally, "Google has been proud to call Texas home since 2007. We [Google] remain deeply committed to our Texas roots . . . ." ECF No. 57-19. At its Austin home, Google expanded its campus, employs its corporate engineering division with about 800 engineers, and partners with various Austin community organizations to promote science and technology. ECF No. 58-3; ECF No. 58-4. Google provided $26 billion of economic

activity to 162,400 Texas in 2020, built a data center in Midlothian, Texas, and is expanding in Austin. ECF No. 58-5.

Google disputes the existence of Motion Offense's Longview office. As evidence, Google provides an investigative report from 2016 showing that the address was not used by Motion Offense. ECF No. 34-3. Had this report been performed after Motion Offense formed in 2018, it might have persuaded the Court. ECF No. 34-2. However, an investigation from 2016 will not convince this Court that Motion Offense lacked a physical Longview office in 2018. ECF No. 56-1 ¶ 5.

Motion Offense argues these facts and evidence under the Fifth Circuit's *Volkswagen* "at home" test and concludes that this factor should be neutral. ECF No. 59 at 14–15. When analyzing this factor under only Fifth Circuit cases argued by Motion Offense, the local interest of Motion Offense in Texas combined with Google's local interest in its "home" in Austin counterbalances Google's local interest in the NDCA, where Google has its headquarters. The Fifth Circuit ruled that "[i]mportant considerations include . . . the Plaintiff's residence." *Def. Distributed v. Bruck*, 30 F.4th at 435 (citing *Volkswagen II*, 545 F.3d at 317–18). Texas's local interest "cannot be overstated" in a case where someone seeks "to bar [a party] from publishing its materials anywhere" and would reduce "Texans' access to [its] materials," even in cases involving "extraterritorial impacts." *Def. Distributed*, 30 F.4th at 435–36. Here, Texas's equivalent local interest would be in determining whether Motion Offense may use its patents to enjoin Google from making, selling, and using the Accused Products, which may prevent Texans from using or accessing Google Drive, Backup and Sync, Drive File Stream, Google Drive for Desktop, Google Docs, Google Sheets, Google Slides, Good Docs Editors, Google One, Google Workspace, Android, Chrome, Chrome OS, Dialogflow, Google Cloud, App Links, and Google Play. ECF No.

64-2 at 1–2. Under *Def. Distributed*, Texans have a local interest in whether or not Plaintiff can use its patents to enjoin Texans' access to these Google products and services, and this local interest cannot be overstated. 30 F.4th at 435–36.

However, Federal Circuit cases have made clear that none of Google's *general* local ties to Texas matter and that a Texas patent plaintiff's ties beyond the WDTX do not matter. Google presents this Court with Federal Circuit rulings that Google's "home" is not where it has a "general presence" in Texas. ECF No. 34 at 14; *In re Google*, 2021 WL 4427899, at *5–6). Instead, the Federal Circuit looks to where "the accused products were designed and developed" by the accused infringer. *In re Google*, 2021 WL 4427899, at *6. The Federal Circuit also ruled the Western District of Texas has no comparable local interest when a Texas plaintiff resides beyond the Western District of Texas. *In re Apple Inc.*, No. 2022-137, 2022 WL 1676400, at *2 (Fed. Cir. May 26, 2022). The Federal Circuit ruled that this Court "incorrectly gave equal consideration to the fact that '[Plaintiff] is headquartered in Flower Mound, Texas' where the patented invention was developed. Since Flower Mound is in the Eastern District of Texas, not the Western District of Texas, [Plaintiff's] office in Texas gives plaintiff's chosen forum no comparable local interest." *Id.* (citing *In re Google LLC*, 2021 WL 4592280, at *6). Thus, the Federal Circuit has limited the Courts in this District to finding a comparable local interest for plaintiffs in cities like Waco and Austin, down south to San Antonio, up north to Hillsboro, and out west to El Paso, all of which lie within the Western District, but Flower Mound, Longview, and Frisco are too far. Finally, the Federal Circuit has long held that "the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Google LLC*, 2021 WL 4592280, at *6 (citing *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009)).

So, under the Federal Circuit's line of cases, the Court looks to where the accused products were designed and developed by Google, not to the location of the plaintiff. Some of the design and development by Google took place in the NDCA, little of it resulted from Mr. Marlow in Austin, and some of it took place outside of both the NDCA and the WDTX. When more design and development by the accused infringer took place in the NDCA, the NDCA has the greater local interest. Because both Mr. Gordon's home in Frisco, Texas and Motion Offense's office in Longview, Texas sit beyond the Western District of Texas, this Court is unable to give them comparable weight.

In conclusion, the Federal Circuit cases require this Court to weigh this factor in favor of transfer.

### c.  Familiarity of the forum with the law that will govern the case is neutral.

The parties agree that this Court and the NDCA both have experience with patent litigation. The Court agrees and finds this factor neutral.

### d.  Avoidance of unnecessary problems of conflict of laws or in the application of foreign law is neutral.

The parties agree that this Court's decision would not create a conflict of laws or apply foreign laws. The Court agrees and finds this factor neutral.

## VI.   CONCLUSION

When following the Federal Circuit cases, this Court finds of that the private interest factors, one weighs heavily in favor of transfer, one weighs strongly in favor of transfer, one weighs in favor of transfer, and one weighs against transfer. Overall, the private interest factors clearly favor transfer. The public interest factors are neutral overall because one public interest

factor favoring transfer cancels out a public interest factor weighing against transfer. Transferring the case will make trial clearly more convenient.

**IT IS HEREBY ORDERED THAT**:

1) Google's Motion to Transfer to the Northern District of California is **GRANTED**. ECF No. 34.

2) All deadlines in this case are **VACATED**.

3) Before the Court transfers this case, the parties shall meet and confer to file a joint case management statement indicating if any case management issues need resolution before transfer. If no issues remain, then the parties shall contact the Court's law clerk to effect transfer of this case. If any case management issues remain, then the parties shall contact the Court's law clerk to arrange a hearing to resolve any lingering case management issues before the Court transfers this case.

**SIGNED** this 29th day of August, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE